IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DAVID VERDERAME, | : | |
| Plaintiff, | : | 2:13-cv-02539-MSG-DS |
| v. | : | |
| RADIOSHACK CORPORATION, | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF HIS UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS ACTION SETTLEMENT**

Plaintiff David Verdame ("Plaintiff") submits this memorandum of law in support of his motion for preliminary approval of his proposed class action settlement with Defendant Radioshack Corporation ("Defendant"). The Class Action Settlement Agreement ("Agreement") accompanies the motion. *See* Doc. 42-1. For the following reasons, the Court should preliminary approve the Agreement and the notice protocols described therein:

**I.   BACKGROUND**

   **A.   Procedural History.**

In April 2013, Plaintiff commenced this class action lawsuit in the Philadelphia Court of Common Pleas, alleging that Defendant violated the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§333.101, *et seq.*, by utilizing the Fair Labor Standards Act's ("FLSA's") "fluctuating workweek" methodology ("FWM") to calculate the overtime premium pay owed to certain salaried Store Managers ("SMs") employed in Pennsylvania. The FWM is described at 29 C.F.R. § 778.114 and is clearly permissible under the FLSA. However, according to Plaintiff, the FWM is not permitted under the PMWA.

In May 2013, Defendant removed the lawsuit to this Court. During a September 2013 scheduling conference, the Court and the parties agreed that the FWM's legality under the

PMWA was a threshold legal issue worthy of early resolution.  Accordingly, the Court ordered the parties to file cross-motions addressing the following question: "Does Radio[S]hack's use of the [FWM] for calculating overtime pay violate the Pennsylvania Minimum Wage Act."  *See* Doc. 20.  These cross motions were fully briefed by December 2013.  *See* Docs. 21-26.

In July 2014, the Court issued a memorandum opinion explaining that the PMWA does not permit the FWM and holding that Defendant's "method of computing overtime violates the PMWA's requirement that employees be paid overtime 'not less than one and one-half times the employee's regular rate.'"  Verderame v. RadioShack Corp., 2014 U.S. Dist. LEXIS 93688, *1 (E.D. Pa. July 10, 2014) (quoting 43 P.S. § 333.104(c)).

In October 2014, the Court presided over a scheduling conference during which the parties agreed that various issues remained outstanding, including, *inter alia*, (i) whether the lawsuit should be certified as a class action, (ii) the amount of unpaid overtime allegedly owed to Plaintiff and the putative class, and (iii) whether, Defendant – notwithstanding its contemporaneous use of the FWM to pay overtime to Plaintiff – could assert that Plaintiff was an overtime-exempt "executive" or "administrator."  At the conclusion of the conference, the Court entered a scheduling order setting deadlines for discovery and for Plaintiff's anticipated class certification motion.  See Doc. 34.

Meanwhile, discovery was ongoing.  Defendant produced to Class Counsel all pertinent policy documents and class-wide payroll data for the time period from April 5, 2010[1] until August 8, 2014.  Based on an analysis of the payroll data, the parties agreed that the class

---

[1]  Since Plaintiff's Common Pleas Court complaint was filed on April 5, 2013, the class period extends backwards to April 5, 2010 due to the PMWA's three-year limitations period.  See Gonzalez v. Bustleton Services, Inc., 2010 U.S. Dist. LEXIS 23158, *19-21 (E.D. Pa. Mar. 5, 2010).

2

members' alleged unpaid overtime totaled approximately $3.9 million as of August 8, 2014.

On November 19, 2014, Judge Strawbridge presided over an in-person settlement conference.  Prior to the conference, the parties exchanged detailed memoranda and attachments addressing the relative strengths and weaknesses of their positions.  The conference was a success, and the parties agreed to settle this lawsuit pursuant to the terms described in Section I.B below.

Importantly, as part of the settlement, Defendant agreed to the certification of this lawsuit as a class action.  This agreement is reflected in the Court's November 24, 2014 Order certifying the following class:  "All individuals employed by Defendant in Pennsylvania who, during any workweek since April 5, 2010, had their overtime pay calculated pursuant to the fluctuating workweek method."  Doc. 40 at ¶ 1.  This class consisted of approximately 545 individuals.  The Court also appointed the undersigned law firms to serve as Class Counsel.  See id. at ¶ 3.

**B.      The Settlement Terms.**

Under the settlement, Defendant will pay a total of $700,000.  See Agreement (Doc. 42-1) at ¶ 3.  Of this amount: (i) $513,000 will be paid to the class members, see id. at pp. 2-3 (defining "Settlement Share"); (ii) $185,000 will be paid to Class Counsel to cover all attorney's fees and expenses (including expenses incurred by the third-party settlement administrator), see id. at ¶ 12;[2] and (iii) a $2,000 service award to Plaintiff, see id. at ¶ 11.  The settlement is not contingent on the Court's approval of the requested attorney's fees, expenses, or service award, see id. at ¶¶ 11-12, and any disapproved monies will be distributed to the class members, see id.

Importantly, class members are *not* required to file a claim to receive a settlement

---

[2]  After this $185,000 payment is reduced for expenses, Class Counsel's fee will be less than 25% of the $700,000 settlement fund.

payment.  See Agreement (Doc. 42-1) at ¶¶ 6, 10.  Rather, all class members will receive a payment unless they exclude themselves from the settlement.  See id.  Moreover, the settlement is entirely *non-reversionary*.  Any funds from uncashed checks will be contributed to the Pennsylvania IOLTA Board.  See id. at ¶ 10.

Finally, class members who do not exclude themselves from the settlement are bound by a limited release that covers claims that were pled in or are reasonably related to the lawsuit.  See Agreement (Doc. 42-1) at ¶ 6.

### C.     Why Plaintiff Settled.

As already explained, the settlement will distribute (free and clear of attorney's fees and expenses) $513,000 in payments to the class members.  As of August 8, 2014, the class's alleged unpaid overtime wages totaled approximately $3.9 million.  Class Counsel estimates that this amount will increase to approximately $4.2 million once the payroll data is updated through December 2014.  In sum, the settlement enables class members to recover approximately 12% of their alleged unpaid overtime wages.

Here is why Plaintiff and Class Counsel agreed to settle under the above terms:

First, as is widely known, Defendant's financial circumstances are dire, and it is quite possible that it will declare bankruptcy sometime in 2015.  See New York Times Article entitled "RadioShack Bankruptcy Filing Could Be Near" September 11, 2014 (attached as Appendix 1); Defendant's SEC 10-Q Statement for Period Ending November 1, 2014 at pp. 6-7 (attached as Appendix 2).

Second, the settlement has enabled Plaintiff to obtain class certification.  Based on Class Counsel legal research, it will be extremely advantageous for class members to enter any future bankruptcy proceedings as members of a class that *already* is certified by this Court.  Otherwise,

there is a risk that individual class members would be required to file individual claims with the Bankruptcy Court (which, of course, very few class members would have the wherewithal to do).

Third, the settlement enables Plaintiff and the class to avoid litigation risks, including a possible finding that Plaintiff and the class are overtime-exempt executives or administrators. While Plaintiff believes he ultimately could defeat this argument, some courts have found appeal to Defendant's arguments that certain store managers are overtime-exempt.  See Goldman v. RadioShack Corp., 2006 U.S. Dist. LEXIS 2433 (E.D. Pa. Jan. 23, 2006); Madely v. RadioShack Corp., 742 N.W.2d 559 (Wis. App. 2007).

## II.   ARGUMENT

### A.   Preliminary Approval Is Warranted.

Federal courts must approve class action settlements in order to ensure that class members receive sufficient notice of the settlement and that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Approval of a class action settlement entails a two-step process.  Initially, the court makes a preliminary determination of the settlement's fairness.  If the court preliminarily determines that the settlement is fair, settlement class members are notified of the settlement and a final fairness hearing is scheduled.  Later, at the final fairness hearing, the court undertakes a more thorough evaluation of the settlement's fairness, reasonableness, and adequacy.  See generally In re:  Automotive Refinishing Paint Antitrust Litig., 2004 U.S. Dist. LEXIS 29163, *2-5 (E.D. Pa. May 10, 2004); Manual for Complex Litigation, Fourth, § 21.632.

Preliminary approval merely "establishes an initial presumption of fairness," In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995), and confirms that "the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies," In re Automotive Refinishing Paint Antitrust Litig., 2003 U.S. Dist LEXIS 4641,

5

*2-3 (E.D. Pa. Mar. 17, 2003); accord Dugan v. Towers, 2013 U.S. Dist. LEXIS 136305, *12 (E.D. Pa. Sept. 24, 2013) (Goldberg, J.); Harry M. v. Pennsylvania Dept. of Public Welfare, 2013 U.S. Dist. LEXIS 48758, *3 (M.D. Pa. Apr. 4, 2013); Hanlon v. Palace Entertainment Holdings, LLC, 2012 U.S. Dist. LEXIS 364, *14 (W.D. Pa. Jan. 3, 2012); Mehling v. New York Life Ins. Co., 246 F.R.D. 467, 472 (E.D. Pa. 2007).

Applying the above principles to this lawsuit, the Court should preliminarily approve the proposed settlement. The settlement is the product of arms-length bargaining by experienced counsel armed with discovery and a full understanding of the litigation risks. See Section I supra. In this regard, the fact that settlement was reached during adversarial settlement proceedings presided over by Judge Strawbridge weighs heavily in favor of preliminary approval. See, e.g., Vines v. Covelli Enterprises, 2012 U.S. Dist. LEXIS 170870, *16-18 (W.D. Pa. Nov. 30, 2012).

Moreover, evidence of collusion or self-dealing is non-existent. The $700,000 settlement payment is non-reversionary, leaving Defendant with no financial incentive to encourage class members to exclude themselves from the settlement. Also, after reductions for litigation and settlement administration expenses, Class Counsel will recover fees that are less than 25% of the common fund. Such fees are below-average, see Creed v. Benco Dental Supply Co., 2013 U.S. Dist. LEXIS 132911, *17 (M.D. Pa. Sept. 17, 2013) (citing cases), and belie any suggestion that this is a "fee-driven" settlement.

In sum, the settlement warrants preliminary approval.

### B.    The Class Notice Plan Should be Approved.

When a class action lawsuit is settled, "[t]he court must direct to class members notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). As Your Honor has observed, "notice by first-class mail . . . has long been considered

6

to satisfy due process in the class action context." Dugan, 2013 U.S. Dist. LEXIS 136305, AT *16-17.

Here, the notice process required by the Agreement warrants Court approval. The notice process will be overseen by an experienced third-party administrator, see Agreement (Doc. 42-1) at p. 3 (defining "TPA"), with possession of all class members' contact information, see id. at ¶ 6. Promptly after the preliminary approval, the administrator will mail to each class member a settlement notice. See id. The administrator also will update the address information for any class member whose notice is returned as undeliverable and will promptly re-mail the notice to any updated address. See id.

The notice is written in clear language and accurately describes the settlement, the scope of the release, and the process class members must follow to object to or be excluded from the settlement. See Agreement (Doc. 42-1) at Ex. A. Moreover, unlike many other class action settlements, the notices are individually addressed to each class member and specifically tell each class member the amount of his/her individual recovery.

In sum, the notice protocols are first-rate and should be approved.

### IV.    CONCLUSION

For the above reasons, the Court should grant this motion and enter the accompanying proposed order.

Date:  December 16, 2014                         Respectfully submitted,

/s/ Peter Winebrake
Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
 (215) 884-2491

Paul J. Lukas (admitted *pro hac vice*)
Timothy Selander (admitted *pro hac vice*)
NICHOLS KASTER, PLLP
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 256-3200

Class Counsel